UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FRANK SHIELDS** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 13-5135** |
| **NEW ORLEANS PUBLIC BELT RAILROAD CO.** | * | **SECTION "L" (4)** |

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by Defendant New Orleans Public Belt Railroad Commission ("NOPB"). (Rec. Doc. 16). The Court has reviewed the briefs and applicable law and now issues this order and reasons. Because the Court finds that there are material issues of fact in dispute, the motion is denied.

### I.   BACKGROUND

This Federal Employer's Liability Act ("FELA") case arises from an injury to Plaintiff Frank Shields while he was employed as a Trainmaster by NOPB. Shields claims that on or about July 30, 2010, he was assaulted by a fellow NOPB employee, Joel McKay. (Rec. Doc. 1 at 2). According to Shields' deposition testimony, the altercation took place shortly after McKay arrived at work. Shields claims that earlier that day he called McKay to let him know that they needed him to report to work to fill a vacancy. (Rec. Doc. 28-2 at 4). Instead of calling McKay, Shields called McKay's wife's phone, which Shields claims was listed as an alternate number for McKay. (Rec. Doc. 28-2 at 5). Shields claims that McKay took the phone from his wife and began "ranting and raving and cursing and [saying] vulgarities," at which point Shields says he

hung up the phone. (Rec. Doc. 28-2 at 5). Shields claims that after he hung up the phone he called his supervisor, Tom Lobello, and told him about the incident and that he wanted McKay to be pulled out of service. (Rec. Doc. 28-2 at 8). Shields claims that Lobello instructed Shields to allow McKay to come to work and to reprimand him in the office after he arrives. (Rec. Doc. 28-2 at 8). After McKay arrived at work, Shields alleges that he and McKay began to have words with each other in the office. Shields admits that he called McKay a "boldfaced liar" because McKay was denying that he cursed at Shields on the phone. (Rec. Doc. 28-2 at 10). Soon after, Shields claims that McKay "came with both his hands" toward Shields. Shields claims that he jerked his body to defend himself. (Rec. Doc. 28-2 at 11).

According to Shields, as a result of this assault he was placed in immediate apprehension of bodily harm and injured his cervical spine and lumbar spine. (Rec. Doc. 1 at 2). As a result of this incident, Shields claims that he began to experience pain in his neck a day later. (Rec. Doc. 28 at 9). Shields claims that on August 3, 2010, after experiencing severe neck pain, numbness, and tingling, he "blacked out" while driving and swerved into a ditch. (Rec. Doc. 28 at 10). Shields alleges that all of his injuries and treatment, including those that resulted from the car accident, were caused by the on-duty altercation with McKay. (Rec. Doc. 28 at 10). Shields claims that this altercation was reasonably foreseeable and that NOPB failed to provide him with a reasonably safe place to work in violation of FELA. (Rec. Doc. 1 at 2). Shields asks to be compensated for his physical and mental pain and suffering, loss of enjoyment of life, lost wages, medical expenses and future lost wages. (Rec. Doc. 1 at 3-4).

NOPB filed an answer on September 16, 2013, in which it denies all liability. (Rec. Doc. 5). NOPB claims that it is not liable for the intentional behavior of its employee. Further,

NOPB claims that Shields contributed to the cause of his injuries and failed to mitigate his damages. (Rec. Doc. 5 at 3). NOPB offers a slightly different version of the incident. Specifically, NOPB suggests that McKay was joking with Shields when he reacted to him on the phone earlier that day. (Rec. Doc. 16-1 at 6) ("Mr. Chisolm overheard some of what was being said and testified that he thought that Mr. McKay was joking. Mr. McKay testified that he was in fact joking with Plaintiff."). NOPB claims that when Shields reported the conversation to his supervisor, Lobello, he did not indicate that he felt physically threatened by McKay. (Rec. Doc. 16-1 at 8). NOPB claims that Lobello told Shields to counsel McKay when he arrived at work and that Shields confronted McKay in the office in front of a witness, Yardmaster Ike McPherson. According to NOPB, the conversation between Shields and McKay was calm until Shields called McKay a "bald-faced liar." (Rec. Doc. 16-1 at 11). NOPB characterizes this as the turning point in the conversation. NOPB claims that McKay became angry, raised his voice and started making hand gestures. (Rec. Doc. 16-1 at 12). NOPB emphasizes that according to McPherson, McKay never lunged or swung at Shields. (Rec. Doc. 16-12 at 8). After the incident, NOPB claims that McKay left the office and was eventually sent home by Shields and McPherson without incident. (Rec. Doc. 16-1 at 14).

**II.    PRESENT MOTION**

NOPB filed the present motion for summary judgment. (Rec. Doc. 16). NOPB claims that it was not negligent in its supervision of McKay because it had no reason to suspect that McKay had a propensity to act in a violent, aggressive, or threatening manner. (Rec. Doc. 16-1 at 6). NOPB claims that McKay had been employed by NOPB for over two years and had never

been disciplined for violent behavior or acts of aggression.  NOPB also quotes the deposition testimony of several NOPB employees who testified that they had never had problems with McKay before.  (Rec. Doc. 16-1 at 19).  NOPB claims that Shields had the authority to remove McKay from duty and the fact that he did not do so shows that Shields himself did not feel threatened by McKay and did not expect McKay to become violent.  (Rec. Doc. 16-1 at 19).

NOPB also argues that it should not be held liable for McKay's actions which were simply a reaction to Shields' provocation.  NOPB cites a case in which the Missouri Court of Appeals found that a railroad was not liable for one employee's attack that was triggered by the plaintiff's own comments.  (Rec. Doc. 16-1 at 21) (citing *Kutz v. Terminal Railroad Association of St. Louis*, 367 S.W.2d 55 (Mo. Ct. App. 1963)).  NOPB also argues that Shields is unable to prove that McKay was acting within the scope of his employment because he had not started work yet and was not in his work area at the time of the incident.  (Rec. Doc. 16-1 at 21).  Last, NOPB takes issue with the fact that an assault even occurred.  NOPB claims that Shields is much larger than McKay and that McKay did not make contact with Shields at any point.  (Rec. Doc. 16-1 at 14).  NOPB also points out that Shields sent an e-mail to Lobello shortly after the incident, in which Shields did not mention that he was injured or that he had to jerk his body away from McKay.  (Rec. Doc. 16-1 at 15).

In opposition, Shields argues that there are genuine issues of material fact underlying his claim.  Shields characterizes FELA as a "broad remedial statute that courts construe liberally . . . ."  (Rec. Doc. 28 at 13).  According to Shields, FELA imposes on NOPB a duty to provide its employees with a reasonably safe place to work.  (Rec. Doc. 28 at 11).  Shields claims that this duty requires NOPB to test for and discover dangers that could reasonably be discovered.  (Rec.

Doc. 28 at 11). Shields claims that he can recover for his injuries if they are "in whole or in part" caused by NOPB's negligence. (Rec. Doc. 28 at 12). Shields argues that this case is full of material issues of fact that must be resolved by a jury. (Rec. Doc. 28 at 15). Shields points to deposition testimony of key witnesses that he claims directly contradict each other. (Rec. Doc. 28 at 16-18).

Shields claims that NOPB is liable under three separate theories: negligent supervision, negligent hiring, and respondeat superior. In support of his first theory, Shields focuses on the actions of his supervisor, Lobello. Shields claims that before McKay came to work Shields contacted Lobello and told him that McKay was being hostile and aggressive and should be pulled from service immediately. (Rec. Doc. 28 at 3). According to Shields, Lobello refused to do so and told Shields to confront McKay at work instead. Shields claims that this decision by Lobello directly contradicted NOPB's Code of Operating as well as its Violence-Prevention Policy. According to Shields, the General Code of Operating Rule 1.6 provided that employees should be reported and may be dismissed if they display "[a]ny act of hostility, misconduct, or willful disregard or negligence . . . " (Rec. Doc. 28-3 at 2). Shields also argues that Lobello's decision not to dismiss McKay violated NOPB's "Policy Regarding Prevention of Violence in the Workplace," which became effective in February 2000. Shields claims that this zero-tolerance policy is proactive and encourages early reporting of problems. (Rec. Doc. 28 at 7). Shields claims that NOPB management routinely violated the violence policy. (Rec. Doc. 28 at 8). Shields argues that the assault was reasonably foreseeable and Lobello failed to prevent it. (Rec. Doc. 28 at 22).

Shields also argues that NOPB is liable for the negligent hiring of McKay. Shields

claims that NOPB had information regarding McKay's past employment, which was terminated after McKay played a dangerous "practical joke" on a co-employee. (Rec. doc. 28 at 22). Shields argues that this information was accessible to NOPB and NOPB should have investigated further into McKay's violent past. (Rec. Doc. 28 at 23).

Last, Shields argues that NOPB is liable under a theory of respondeat superior because both Shields and McKay were acting in the course and scope of their employment when the incident took place. (Rec. Doc. 28 at 19). Shields claims that the assault centered on two employment-related problems and that both men were on duty at the time. Shields argues that the assault was not committed by McKay for purely personal reasons. Accordingly, Shields claims that NOPB is liable for his actions. (Rec. Doc. 28 at 21).

### III. LAW & ARGUMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### A. Federal Employer's Liability Act ("FELA")

The FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence . . . ." 45 U.S.C. § 51. In order to further the goals of Congress in enacting FELA, the courts have "liberally construed FELA." *Gottshall*, 512 U.S. at 543; *see CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630, 2636 (2011) (explaining that the purpose of the act was to "shif[t] part of the human overhead of doing business from employees to their employers.") (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994))).

*1. Negligent Supervision & Negligent Hiring*

"FELA provides the exclusive remedy for a railroad employee injured as a result of its employer's negligence." *Rivera v. Union Pacific R. Co.*, 378 F.3d 502, 507 (5th Cir. 2004). What constitutes negligence under the statute is a federal question that should be guided by principles of common law. *See Gottshall*, 512 U.S. at 543. As the United States Supreme Court has explained, at common law the employer had a duty to provide his employees with a safe place to work. *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 352 (1943). Accordingly, "[t]he ultimate fact question is whether the railroad exercised reasonable care in creating a reasonably safe working environment." *Rivera*, 378 F.3d at 507 (citing *Urie v. Thompson*, 337 U.S. 163, 179 n.16 (1949)). The standard of care under FELA is that of ordinary prudence under the circumstances. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997). Because

the Supreme Court has found that there is a relaxed standard of causation under FELA, it is sufficient that the employer's negligence "played any part, even the slightest, in producing the injury or death for which damages are sought." *CSX*, 131 S.Ct. at 2636 (quoting *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506 (1957)).

"[R]easonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence." *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 118 (1963). The harm must be reasonably foreseeable in order for the employer to be held liable for failing to protect against it. The Supreme Court has held that "the fact that 'the foreseeable danger was from intentional or criminal misconduct is irrelevant, [the employer] nonetheless had a duty to make reasonable provision against it.'" *Harrison v. Missouri Pac. R. Co.*, 372 U.S. 248, 249 (1963) (quoting *Lillie v. Thompson*, 332 U.S. 459, 462 (1947)).

NOPB essentially makes the argument that it is not liable under FELA because McKay did not actually assault Shields. (Rec. Doc. 16-1 at 13). Furthermore, NOPB argues that McKay's allegedly violent actions were not foreseeable to NOPB. Shields, on the other hand, argues that McKay assaulted him in the office and injured him. Shields also claims that Lobello should have foreseen that McKay was dangerous and should have prevented the assault from taking place. Whether an assault took place, as Shields alleges, is a question of fact that must be decided by a jury. Similarly, whether Lobello should have known that a confrontation was going to take place is also a disputed question of material fact. The fact finder must determine what was said during the initial phone call between Shields and McKay, what was conveyed to Lobello by Shields, how threatened Shields felt at the time, what actually took place in the office, and whether Shields was injured by the incident. These questions of material fact

preclude this Court from granting summary judgment. The Court cannot say, as a matter of law, that Shields' injury did not result at least in part from NOPB's negligence. *See Lillie v. Thompson*, 332 U.S. 459, 462 (1947) (reversing the district court's grant of summary judgment in a case in which plaintiff was attacked by a criminal and explaining that "we cannot say as a matter of law that petitioner's injury did not result at least in part from such negligence.")

### 2. Respondeat Superior

Shields also alleges that NOPB is liable for McKay's actions under a theory of respondeat superior. One common law principle that carries "great weight" in the FELA context is that "an employer may be vicariously liable for its employee's negligence under the doctrine of respondeat superior so long as the negligence occurred 'in the course of employment.'" *Beech v. Hercules Drilling Compnay, L.L.C.* 691 F.3d 566, 571 (5th Cir. 2012). This has been extended to cover intentional acts of employees as well. *See Sobieski v. Ispat Island, Inc.*, 413 F.3d 628, 632 (7th Cir. 2005).

The question in this case turns on whether McKay was acting in the course and scope of his employment. The Fifth Circuit has explained that "whether a given act by an employee is committed within the course and scope of his employment is highly factual . . . ." *Stoot v. D&D Catering Service, Inc.*, 807 F.2d 1197, 1199 (5th Cir. 1987); *see also*, *Beech*, 691 F.3d at 569 ("Determinations of scope of employment, and, thus, vicarious liability, are most accurately characterized as mixed questions of law and fact because they involve legal conclusions based upon factual analysis.") (quoting *Hussaini v. Marine Transp. Lines, Inc.*, 158 F.3d 584 (5th Cir. 1998)).

The Fifth Circuit has adopted the "business interest" test which requires this Court to

determine whether the employee's actions at the time of the incident were "in furtherance of his employer's business interests." *Beech*, 691 F.3d at 574.  In *Stoot v. D&D Catering Service, Inc.*, the Fifth Circuit applied this test and held that the district court was not clearly erroneous in finding that an employee was outside the course and scope of her employment when she attacked the plaintiff, a co-employee.  807 F.2d at 1200.  The court, referring to this as a "close case," ultimately held that there was enough evidence to support a finding that the employee's attack was motivated by anger and revenge following a personal profane statement made by the plaintiff.  *Id*.  This was true even though the employees were initially arguing over a work-related subject.  The Court highlighted the relevant testimony of the parties and stated that "the district court was entitled to find that Porter was motivated to cut Stoot from anger and revenge following Stoot's personal profane statement to her rather than for reasons related to her employment."  *Id.* at 1200.

In keeping with *Stoot*, NOPB characterizes McKay's alleged assault as a reaction to Shields' name-calling.  (Rec. Doc. 16-1 at 11).  Shields, on the other hand, argues that McKay was angry about NOPB's phone-calling policy as well as Shields' accusation that McKay was in violation of Conduct Rule 1.6.  (Rec. Doc. 28 at 20).  This is a question of material fact that cannot be determined at the summary judgment stage.  A reasonable trier of fact could find that McKay was acting in the course and scope of his employment when he assaulted Shields.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion for summary judgment, (Rec. Doc. 16), is hereby **DENIED.**

New Orleans, Louisiana, this 30th day of April, 2014.

_____
UNITED STATES DISTRICT COURT JUDGE